IN RE GUARDIANSHIP OF RUDY.

[Cite as *In re Guardianship of Rudy* (1992), 65 Ohio St.3d 394.]

(No. 91–2112—Submitted November 10, 1992—Decided December 11, 1992.)

*Chester, Hoffman, Willcox & Saxbe, John J. Chester, Richard B. Metcalf* and *James J. Chester,* for appellant Margaret S. Rudy.

*Guarnieri & Secrest* and *Michael D. Rossi,* for appellee Robert Vesmas.

*Ambrosy & Fredericka* and *James A. Fredericka,* for appellee Lloyd Tompkins.

*Westenfield & Neuman* and *Douglas J. Neuman,* for appellee David W. Rudy.

HERBERT R. BROWN, J.  The issue is whether the appointment of a guardian for Mrs. Rudy complied with Ohio law.  We find that it did not.  Further, despite Mrs. Rudy's death, we choose not to dismiss the case, because parties on both sides agree that the resolution in this case could affect a potential will contest.

The statute governing guardianships is R.C. 2111.02.  R.C. 2111.02(B)(1) states in part: *"If the probate court finds it to be in the best interest of an incompetent or minor, it may appoint pursuant to divisions (A) and (C) of this section, on its own motion or on application by an interested party, a limited guardian with specific limited powers."*  (Emphasis added.)  R.C. 2111.02(C)(3) states: "If the hearing concerns the appointment of a guardian or limited guardian for an alleged incompetent, the burden of proving incompetency shall be by clear and convincing evidence."  Mrs. Rudy was not a minor.  Therefore, before a guardian was appointed, her incompetency had to be proven by clear and convincing evidence.

The probate court held the required hearing and heard the testimony of numerous witnesses.  The court made a long list of findings, including the following: that "Mrs. Rudy is receiving medical treatment for a number of infirmities, and will require on-going medical care in the future," that "Mrs. Rudy is receiving and requires the assistance of other persons in order to live in her own home and obtain medical care, and will require such assistance in .

the future," that "Mrs. Rudy was misinformed about the need to expend and transfer her assets, and relied on that misinformation to her disadvantage in disposing of her assets," and that "[t]he conveyance of Mrs. Rudy's assets was not the proper management of her property, and was not in her best interest." The court then appointed Mrs. Rudy's attorney, John Daily, as limited guardian of her estate. Appellees Tompkins and Vesmas contend the above findings equate to a finding of incompetency and were sufficient to comply with the statutory mandate.

The probate court did not make a finding that Mrs. Rudy was incompetent. The finding that Mrs. Rudy had medical problems and required assistance to live is not sufficient, nor are the rather vague findings that she was "misinformed" about the need to transfer assets and that the transfer was "not in her best interest."

In a second judgment substituting Robert Vesmas as the limited guardian, the court referred to Mrs. Rudy's "incapacity." This term is not defined in the statutes pertaining to guardianship, and its mention in a later judgment cannot substitute for a specific finding of incompetence.

After a lengthy review of the record, the court of appeals stated: "When the instant record is examined and considered along with the judgment entries, it is clear that the trial court's determination of incapacity addressed appellant's competency. Thus, the trial court made a finding of mental impairment, or incompetency, sanctioning the imposition of a limited guardianship." A court of appeals may review findings of fact for an abuse of discretion by the trial court. But it cannot make a finding of fact that should have been made by the trial court, nor extract such a finding from the trial court's opinion where no finding was made.

Without a finding of incompetence, the appointment of a limited guardian by the trial court was improper. Were Mrs. Rudy still alive, the probate court would be directed to rescind the letter of guardianship, and the guardian directed to return assets to Mrs. Rudy's control. However, Mrs. Rudy's death makes this impossible.

Further, we are not in a position to examine all actions taken by the guardian with a view to either voiding or confirming them. The law does not require us to do so. The order by a probate court appointing a guardian cannot be collaterally impeached. *Shroyer v. Richmond* (1866), 16 Ohio St. 455, paragraph seven of the syllabus; *Union Savings Bank & Trust v. Western Union* (1908), 79 Ohio St. 89, 86 N.E. 478, paragraph two of the syllabus; cf. R.C. 2113.23 (pertaining to executors and administrators). Actions taken by a guardian, therefore, are under color of law, and may be upheld even where the guardian's authority is successfully challenged. Since

Mrs. Rudy is deceased, and since the parties have a forum available to test her competency with respect to the wills proposed for probate, we decline to undo any of the actions taken by the guardian while acting under color of law. The assets become a part of Mrs. Rudy's estate the same as if she had owned them free of the guardianship at the time of her death.

However, neither the finding of incompetency by the court of appeals nor the failure of the probate court to find incompetency is to be used in a will contest where the competency of Mrs. Rudy may be an issue. That issue must be resolved *de novo* on the law and the evidence—some of which may, of course, be evidence which was previously submitted to the probate court.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.