OPINION
{¶ 1} Nawaz Ahmed appeals from various orders of the Belmont County Probate Court. The central issue in case No. 01 BA 13 revolves around the features of a conservatorship. Specifically, we are asked to determine two issues: one, whether a court can deny the conservatee's request to remove the conservator and/or terminate the conservatorship; and two, whether the conservator properly requested and the court properly allowed payment of bills from various creditors out of this limited conservatorship. The issues in case No. 01 BA 48 deal with post-judgment motions such as a motion to vacate and various motions to correct or supplement the record. For the following reasons, the decisions of the probate court in both cases are affirmed.
 STATEMENT OF THE CASE {¶ 2} On January 26, 2000, an application for appointment of a conservator over Ahmed's estate was filed in the probate court which was designated as Case No. 00GD49. Attorney Edward Sustersic was named as the proposed conservator. Rather than mark the box giving the conservator all power that a guardian would have, the limited power box was checked and the following limitations were typed in:
 {¶ 3} "liquidate all accounts set forth in attached Judgment ( 12-13-99, 99DR040) and use said monies for the payment of attorney fees and costs to private attorney(s) to represent me in pending criminal matters. Also to pay my conservator for monies owed resulting from prior representation of me and as my conservator. He shall assist in the preparation of tax returns. He is authorized to receive my mail and disburse pursuant to my instructions. To act as a communicator guardian ad litem when necessary with my private attorney(s) and to handle my said property as I may direct in the future."
 {¶ 4} The powers of the court were then limited to govern the conservator in accordance with the power Ahmed specifically authorized. The space for property subject to the conservatorship again referred to that set forth in the December 13, 1999 judgment of the Belmont County Common Pleas Court in 99DR040. The application was signed by Attorney Sustersic and then by Ahmed on January 18, 2000.
 {¶ 5} The aforementioned December judgment entry from the Common Pleas Court lifted a September restraining order on assets which had been entered in Ahmed's divorce case. The entry directed service upon the administrators of eleven different listed accounts with accompanying account numbers. The entry was signed by Attorney Sustersic as Ahmed's attorney and the attorney of the deceased plaintiff-wife who Ahmed was alleged to have killed. Ahmed was eventually convicted of murdering his wife, Lubaina Bhatti, and four of her relatives. A death sentence was thereafter imposed upon him. It appears that the judge presiding over the criminal matter also placed a restraining order on Ahmed's assets and later lifted it upon motion by Attorney Sustersic so that the funds could be placed in the conservatorship. (Tr. 12-13).
 {¶ 6} The court (without a hearing) appointed Attorney Sustersic as conservator on the same day the petition was filed. On April 3, 2000, the conservator filed an inventory listing the eleven accounts originally included in the application and their values. Additionally, a $238.44 check from another institution not on the original list was placed on the inventory list with an addendum noting that the check was received from Ahmed and deposited into the conservatorship. The total inventory of thepotential conservatorship estate was $57,234.25. The conservator then filed a partial account listing receipts from various financial institutions for a total of $18,481.50. The conservator noted that Ahmed denied him access to four accounts that contain: $13,000; $4,000; $20,000; and $4-7,000.
 {¶ 7} That same day, the conservator filed a motion for fee approval. This motion revealed that the conservatorship was established so that the conservator could assist Ahmed in liquidating accounts to make funds readily accessible to compensate attorneys, investigators, and others for services rendered with respect to the criminal prosecution against Ahmed. Attorney Sustersic then proceeded to state that Ahmed owed him fees for the divorce case and for two civil cases, where he lifted liens in order to preserve the funds for the criminal defense. He disclosed that he accepted the conservator position with the understanding that he would be compensated for past services rendered as specifically stated in the limited powers. He asked for $1,002.43 in expenses. Some of the expenses were from the divorce case; however, he sought no fees from the divorce case. Then, the conservator listed his fees for everything he did for Ahmed since October 12, 1999 relative to the conservatorship. The total fees and expenses sought by the conservator amounted to $4,382.43.
 {¶ 8} Also on April 3, 2000, Ahmed filed a "request for a final hearing to close the conservatorship." He claimed that he mailed a letter to the conservator on March 14, 2000 with a copy to the court, asking him to terminate the conservatorship, to submit a final accounting and to transfer all funds to his brother. Ahmed requested a hearing. A hearing on this motion and the conservator's motion was set for April 19, 2000.
 {¶ 9} On April 12, 2000, the conservator filed a memorandum seeking direction with respect to a letter submitted by Attorney John Vavra claiming that Ahmed owed him $700 for attorney fees and court costs. At the April 19, 2000 hearing, it was established that Attorney Vavra sued Ahmed for fees and that Ahmed missed the trial due to being in jail. (Tr. 1-3).
 {¶ 10} Regarding the conservator's motion for fees, Ahmed argued against the veracity of various items the conservator listed as owing or the time spent thereon. (Tr. 5-8). As for the motion to terminate the conservatorship, the probate court stated that on March 28, 2000, the criminal court determined that the conservatorship shall not be terminated until the happening of certain events. (Tr. 17). The conservator explained his belief that Ahmed had the absolute right to terminate the conservatorship, noting that it was not like a guardianship where the guardian can oppose a request for termination. (Tr. 17-18). He then questioned what would happen to the funds if the conservatorship were terminated. The probate court responded that it would respect the criminal court's order and would only terminate the conservatorship if the stipulations set forth in the March 28, 2000 order were satisfied. (Tr. 18, 20). Specifically, Ahmed was to deposit $10,000 with the clerk of courts or retain his own counsel. (Tr. 18).
 {¶ 11} On April 19, 2000, the day of the hearing, the probate court journalized its decision holding that the conservatorship shall not be terminated until $10,000 is deposited with the clerk and Ahmed satisfies other requirements imposed by the general division's March 28, 2000 order in Case No. 99CR192. The probate court then approved the conservator's full request for fees and expenses in the amount of $4,382.43. Finally, the probate court authorized the conservator to pay Attorney Vavra an amount not to exceed $700. The docket establishes that the order was mailed to Ahmed that day. Ahmed did not appeal this entry.
 {¶ 12} On June 6, 2000, Ahmed filed another motion to remove the conservator raising multiple complaints. For instance, he alleged a conflict of interest and claimed the conservator made false promises to get appointed. That same day, the probate court denied the motion, stating that it had already been dealt with in the April 19, 2000 judgment. However, the court failed to realize that Ahmed's prior motion asked that the conservatorship be terminated, but this motion only sought that the conservator be removed and raised grounds never raised before. Ahmed did not appeal this order. However, neither the entry nor the docket establishes that Ahmed was served with the order. Yet, there are no direct arguments on appeal concerning this entry.
 {¶ 13} On October 25, 2000, Ahmed filed a "notice and motion to terminate the conservatorship." On November 13, 2000, the probate court filed an entry which denied the motion "[i]n compliance with the order of Judge Jennifer Sargus, dated November 9, 2000." No appeal was filed from this order. Yet, once again, the docket shows no evidence that this entry was served on Ahmed.
 {¶ 14} On March 16, 2001, the conservator filed a motion with three branches. The first branch sought approval of expenditures and relied on various exhibits in support. Exhibit A showed a balance of $16,820.51 in the conservatorship account. Exhibit B was a December 27, 2000 entry from the general division instructing the clerk to pay $1,900 to Dr. James Eisenberg which amount was ordered to be a lien on the conservatorship. Exhibit C is a December 2000 entry from the general division approving an hourly rate of $155 for Dr. Jeffrey Smalldon, and exhibit D is a February 2001 entry from the general division approving the sum of $8,641.25 to be paid to Dr. Smalldon; the entry directed the county auditor to pay this doctor.
 {¶ 15} Exhibit E is a September 1999 statement from an accounting firm in the amount of $430 for work in the divorce action; with this exhibit is a letter to the accounting firm from the probate judge advising that the general division forwarded the statement to the probate court and that the firm should send the statement to the conservator. Exhibit F is a September 1999 statement from a reporting service to Attorney Eric Costine for $378 for a deposition of Ahmed in the divorce case and the check used to pay this statement. Exhibit G is a $245.75 bill from a different reporting service to Attorney Costine for the deposition of Ahmed's former wife in August 1999. Exhibit H represents a $35.75 debt owed to the juvenile court in Case No. 99-JC-873-4 for transcription services in September 2000.
 {¶ 16} The conservator noted that he was already paid $4,482.43. He then advised that although he performed additional work since that payment, he elected not to seek supplementary fees except for $450 reflected in Exhibit I for the preparation of the present motion and hearing thereon. Exhibit J contains a $620 bill from mitigation specialist, Marsha Ferrick, for services rendered in Ahmed's criminal case. Finally, Exhibit K is a statement from Attorney Joseph Carpino seeking $1,990 for twenty-five hours of work in case No. ES 99-503. The payments requested totaled $14,690.75.
 {¶ 17} The second branch of the motion sought to pay any remaining balance in the account to the auditor for expenses incurred in Ahmed's defense. The final branch of the motion asked to terminate the conservatorship and release the bond. On March 16, 2001, the court granted all three branches of the motion and ordered the conservator released upon filing of a final accounting. This entry was served on Ahmed and is the main subject of this appeal.
 {¶ 18} On March 21, 2001, before receiving notice of the above entry, the conservator supplemented his motion by attaching a judgment entered in the general division on March 12, 2001 against Ahmed for the costs of his prosecution in the amount of $68,460.36. Some of the listed expenses were $5,769.20 for juror fees and other costs of prosecution; $5,200 for transcription; $28,341.06 in witness fees and trial preparation fees; $563.85 for the sheriff's department; and $28,586.25 for the public defender's office including the fees of the three experts mentioned above and a DNA expert.
 {¶ 19} On March 28, 2001, Ahmed filed a notice/motion to remove the conservator and to restore the estate to himself. That same day, the court responded by filing an entry noting that the conservatorship has been terminated and that Ahmed's motion was moot. On April 2, 2001, Ahmed filed a motion to reject all claims for payment and to determine that the conservator violated his fiduciary duties. On April 4, 2001, Ahmed filed notice of appeal resulting in case No. 01 BA 13. The notice purported to be not only from the probate court's March 16 and 28, 2001 entries but from all previous orders made in the conservatorship.
 {¶ 20} Appellant filed a 110 page brief (tied together with a shoelace), without even attempting to seek leave, in violation of App.R. 19(A) and Loc.App.R. IV. This court seriously considered dismissing his appeal at that time; however, instead, we allowed time plus one extension to file a proper brief and denied any leave to exceed the page limitations. In September 2002, appellant filed what he claims is a thirty-five page brief in case No. 01 BA 13. Yet, there are two different pages numbered two. Moreover, the rule concerning margins was violated. The purpose of requiring a double-spaced brief containing typed matter not more than 6.5 by 9.5 inches is to ensure that a thirty-five page brief is actually that. Appellant's brief appears to be typed in 1.5 spacing and the majority of the pages have type matter more than seven inches horizontal and ten or more inches vertical. As such, appellant again exceeded the page limitation in contravention of the appellate rules and this court's prior order.
 {¶ 21} Besides these formatting failures, Ahmed's brief is extremely unorganized and difficult to read. Appellant purports to set forth nine assignments of error for our review in Case No. 01BA13. The assignments of error are repetitive and overlapping and improperly include unrelated issues under each assignment. See App.R. 12(A)(2); App.R. 16(A). As such, they cannot be effectively addressed in the order set forth or as labeled by appellant. Thus, the pieces of each assignment that relate to other assignments are addressed together below.
 ARGUMENTS IN CASE NO. 01 BA 13 {¶ 22} In general, appellant argues that all orders in this case are void or in the alternative voidable for multiple reasons. As his main remedy, he seeks return of all his funds placed under the conservatorship on the grounds that the conservatorship either never existed or terminated on March 14, 2000. Alternatively, he asks that we at least find that the conservatorship terminated on October 25, 2000. Also alternatively, he urges that the court and conservator acted outside the boundaries delineated in the original application.
 {¶ 23} We will first address appellant's argument that none of the financial institutions holding his funds were in Belmont County, and thus, the court exceeded its territorial jurisdiction. He cites R.C.2109.302(A) which states that if securities are located outside the county, the court may appoint a commissioner or request another probate court to make examination and to report its findings to the court. Ahmed complains that the court found that he had legal settlement in the county but none of his listed accounts were located in the county. He concludes that the conservatorship could not be created with these funds. Firstly, R.C. 2109.302 deals with accounts of the guardian or conservator which must be filed once every two years. It has nothing to do with initial establishment of a conservatorship. Moreover, the statute's language is permissive, not mandatory. Finally, R.C. 2111.021(A), the conservatorship statute, merely states that one may petition "the probate court of the county in which he resides * * *." As such, this argument is without merit.
 {¶ 24} Appellant raises other statutory violations in creating the conservatorship and argues the court lacked jurisdiction as a result. Appellant complains that the court failed to follow the statutory procedure which requires a hearing before appointing a conservator. He notes that the application was prepared by the proposed conservator. Along this line, he claims that his signature is forged on the application. He then claims that the conservator was not permitted to file the application because he was an interested party since he was acting as appellant's attorney when he filed a motion to lift the restraining order on funds entered in the divorce case. Finally, he states that he was not physically infirm.
 {¶ 25} R.C. 2111.021 provides that a "competent adult who is physically infirm may petition the probate court of the county in which he resides" for a conservatorship. This statute further provides: "After a hearing, if the court finds that the petition was voluntarily filed and that the conservator is suitable, the court shall issue an order of conservatorship." The interest of the conservator and whether the conservator is suitable is also questionable; however, such questions should have been determined at the appointment hearing. Here, the application was granted the day it was filed, and there is no indication that a hearing was held. This was an error. However, as will be seen below, the issue was not appealed at the proper time.
 {¶ 26} Whether a prisoner could be considered physically infirm due to physical confinement and whether a prisoner can seek a conservatorship are also questionable. See R.C. 2111.01 (defining incompetent as including "any person confined to a correctional institution"); 2111.02 (allowing guardianships when the court finds the person is incompetent and the appointment is necessary); 2111.021
(allowing conservatorships for petitioners who are competent but physically infirm); 5120.13 (mentioning guardians or conservators in conjunction with deposits to prisoners accounts). But, see, Schafer v.Haller (1923), 108 Ohio St. 322 (holding that the prior guardianship statute which allowed appointment of a guardian over physically disabled persons without their consent was unconstitutional at a time before the statute was amended to include those in penal institutions under the definition of incompetent). Once again, as is addressed infra, the issue was not appealed at the proper time.
 {¶ 27} Appellant points out that a conservatorship shall terminate upon the written execution of notice of termination by the petitioner. R.C. 2111.021. This notice shall take effect upon execution and shall be filed with the court and served on the conservator. A termination notice dealing with a conservatorship of the estate is void unless it is filed with the court within fourteen days after its execution. Ahmed states that he executed a termination letter on March 14, 2000 with an effective date for termination of March 20, 2000 and mailed it to the conservator with a copy to the probate court. When appellant reasserted his rights in an April 3 motion, the probate court refused to terminate based on the general division's March 29, 2000 order. Appellant complains that the probate court improperly failed to cause the March 14 letter containing notice of termination to be date-stamped. In fact, the letter was provided to this reviewing court as part of the probate court's post-judgment order granting appellant's motion to supplement the record with correspondence which the court failed to stamp, the probate court being its own clerk. Appellant also notes that there was no dispute as to receipt of this letter by the conservator or the court at the April 19, 2000 termination hearing.
 {¶ 28} Regardless of the dates, appellant sets forth arguments on why the general division's order was improper; however, the general division's order is not before this court. Appellant then contends that a probate court is not bound by an order of the general division and that the general division cannot order that the conservatorship not be terminated. He also states that the probate court had no authority to settle any claims against the property of the petitioner except for fees and expenses of the conservatorship. He alleges that the conservator and judge acted in bad faith. Appellant complains that the conservator breached his fiduciary duty by engaging in fraudulent activity, self-dealing, and negligence. He complains that the conservator placed some funds in the conservatorship that were not listed in the limited application for a conservatorship, such as a tax refund confiscated by the jail and sent to the conservator at the request of the probate court.
 {¶ 29} Appellant notes the self-serving statements in the application as to old fees owed to the conservator. He claims that the $100 per hour rate is outrageous. He complains that he was charged for the conservator's preparation of guardianship papers prior to the preparation of conservatorship papers, noting that a guardianship would have been inappropriate because he was not incompetent. He also makes arguments concerning other fees charged by and paid to the conservator.
 {¶ 30} Notwithstanding the many errors alleged, appellant never appealed from the April 19, 2000 order. This is the order that refused to terminate the conservatorship and granted conservator fees. On appeal, he could have raised the issues surrounding establishment, refusal to terminate, and permitted payments. As for this failure to appeal the order, appellant blames the conservator and the court for failing to tell him that the order was final and appealable. However, such is not their duty. Thus, we hold that Ahmed waived any arguments surrounding deficiencies in the initial establishment of the conservatorship, the failure to terminate the conservatorship upon his March 14, 2000 letter and his April 3, 2000 motion, the $700 payment to Attorney Vavra, and the allowance of various fees to the conservator. State ex rel. Robinson v.Cuyahoga Cty. Common Pleas Court (1996), 75 Ohio St.3d 431 (the remedy is to appeal the appointment of the guardian ad litem). See, also, In reGuardianship of Rudy (1992), 65 Ohio St.3d 394, 396 (holding that the order of a probate court appointing a guardian cannot be collaterally impeached). As such, the above arguments are overruled.
 {¶ 31} As for any argument seeking to impose liability on the financial institutions and collect damages, such are not within the review power of this court from this action. The financial institutions were not parties here, and there is no indication of bad faith under the commercial transactions statute he cites, R.C. 1339.04. Additionally, he did not raise this argument below or appeal at the proper time. Neither can we directly impose "damages" on the conservator in an appeal from an order terminating a conservatorship and allowing various debts to be paid out of the conservatorship.
 {¶ 32} As mentioned in the introduction, appellant alternatively argues that the probate court was not permitted to deny his October 25, 2000 motion/notice to terminate the conservatorship. He notes that the probate court cited yet another order of the general division entered on November 9, 2002 as the reason why it would not terminate the conservatorship.
 {¶ 33} We agree that a probate court has exclusive jurisdiction to appoint and remove guardians and conservators, direct and control their conduct, and settle their accounts. R.C. 2101.24(A)(1)(e); In reClendenning (1945), 145 Ohio St. 82, 89 (stating that a common pleas court cannot grant a writ of habeas corpus upon finding that a ward is no longer incompetent because the probate court is the only court that can restore control of property subject to a guardianship to the ward.).
 {¶ 34} However, regardless of the trial court's stated reasons, Ahmed's termination notice is faulty. Pursuant to R.C. 2111.021, a termination notice shall take effect upon execution, shall be filed with the court, and shall be served upon the conservator. This statute also warns that a termination notice is void unless it is filed with the court within fourteen days after execution. Ahmed did not date his signature. As such, there is no indication that the notice was filed within fourteen days of execution. Accordingly, the termination notice is void.
 {¶ 35} Next, appellant sets forth arguments concerning the actual appealed order of March 16, 2001, which terminated the conservatorship and allowed depletion of the conservatorship funds through payments to various individuals. Appellant initially contends that the probate court was without power to terminate the conservatorship on motion of the conservator. Although the statute allows termination by order of the court, appellant reads this as only applying in cases where the ward is incompetent or dead. Such is an incorrect reading of R.C. 2111.021. Alternatively, Ahmed states that even if the court can terminate a conservatorship sua sponte, it cannot do so if prompted by the conservator. This argument is also without merit.
 {¶ 36} We move to the court-approved expenditures of conservatorship funds. Appellant complains that the expenditures were outside the scope of the powers granted in the application for a limited conservatorship, which provides in part that the conservator has the power to liquidate all accounts set forth in the December 13, 1999 Judgment in Case No. 99DR040 and use the funds for the payment of attorney fees and costs to private attorneys to represent Ahmed in pending criminal matters and in ways that he can direct in the future.
 {¶ 37} Ahmed claims violations of the clauses: "direct in the future" and "attorney fees and costs to private attorney(s) to represent me in pending criminal matters." He points out that the expenditures were made either to non-lawyers or to lawyers who performed actions in cases other than the criminal case. He states that the conservator had no authority to settle claims against his estate and was without power to ask that any remaining funds be paid to reimburse the county for its expenditures in the criminal case. Additionally, appellant complains that he was not afforded an opportunity to respond to the conservator's request to expend funds as it was granted the same day it was made.
 {¶ 38} First, we should note that the problems in this case are multiple. From the beginning, it appears that the probate court was treating this case as if it were a guardianship where the court need not heed the wishes of the ward rather than a voluntary conservatorship. Although appellant waived many of the initial errors, appellant did timely appeal from the order which allowed payment to all who asked the conservator for payment.
 {¶ 39} Appellant complains about the probate court's approval of $450 in conservator fees for preparation of motion to disperse funds, close out the conservatorship and hearing on the same if any was to be held. One of the limited powers granted is "to pay my conservator for monies owed resulting from his prior representation of me and as my conservator." We find no problem with the order to pay $450 in conservator fees for the final distributions.
 {¶ 40} Concerning the issue of other approved payments, some payments were related to the criminal case, such as fees for expert witnesses and can reasonably be considered costs relating to the pending criminal cases under the terms of the limited conservatorship. In fact, Exhibit B represented a lien for expert witness fees in the amount of $1,900. Moreover, Exhibits C and D ($8,641.25 to mitigation expert in capital case) and J ($620 to assisting mitigation specialist) represented other expert witness fees resulting from Ahmed's criminal defense. Thus, appellant's arguments regarding these payments are overruled.
 {¶ 41} Other payments were allegedly unrelated to the costs and fees in the criminal case. We note that the relevant law pertaining to guardianships applies to conservatorships if not otherwise conflicting, and the guardian of the estate's duties include paying all just debts due from the ward. R.C. 2111.021; 2111.14(C). Thus, a conservator may generally pay all just debts due from the ward. Ahmed urges that this is a limited conservatorship and the conservator has no authority to make payments outside the scope of power granted to him in the application signed by the conservatee or in the judgment entry appointing the conservator which limits the power of the court "[t]o govern my conservator in accordance with the powers specifically authorized." However, appellant's argument that these payments[1] were ultra vires, i.e. beyond the scope of the power delineated in the limited conservatorship, cannot be addressed. These arguments are contained in the last four pages of the brief, which are not properly before us due to the fact that appellant violated the appellate rules and our prior order. Once again, he filed a brief that exceeds the page limit. Although we could have dismissed this entire appeal for his transgressions, we addressed the issues presented up until assignment of error number eight; from there, he more than exceeds the page limits, and thus, we shall not consider the arguments contained thereafter.
 {¶ 42} Even if we were to address (and in fact even if we happened to sustain) the arguments concerning these payments unrelated to the criminal case, appellant would not benefit from such a ruling. Rather, only reversal of those payments would just result in more money being given to the county because the probate court ordered distribution of all remaining proceeds (about $3,000 at the time) to the county for partial reimbursement for providing Ahmed's criminal defense. If we then reached this issue, we would hold that such distribution would fall under the terms of the limited conservatorship to pay for costs and attorney fees in the pending criminal case. Thus, our refusal to consider appellant's last arguments does not prejudice him. For all of the foregoing reasons, we find appellant's appeal in Case No. 01BA13 to be without merit, and we thus, affirm the probate court's order in that case.
 MOTIONS AND ORDERS AND THEIR RELATED ARGUMENTS IN CASE NO. 01 BA 48 {¶ 43} On April 4, 2001, Ahmed filed a motion to vacate the orders of March 16 and 28, 2001 and any other orders made but not served in 2001. He complained that the March 16 order was made without notice or input from him. In the alternative, Ahmed's motion asked the probate court to transfer the case to the court of appeals by means of the notice of appeal simultaneously filed. The probate court chose the latter alternative. Ahmed argues in his first and ninth assigned errors on appeal that the probate court erred in refusing to rule on the motion to vacate notwithstanding the fact that he had simultaneously filed a notice of appeal in the appellate court. First, appellant ignores the law on the lower court's loss of jurisdiction to vacate a judgment once notice of appeal is filed. Second, appellant himself gave the trial court this alternative, whether he meant to or not. In fact, he alternatively posits that the probate court should have asked this court to remand in order for the probate court to regain jurisdiction to vacate its order. Obviously, such a motion is his own responsibility, not that of the probate court.
 {¶ 44} The record was transmitted to the court of appeals on April 9, 2001. Still, on April 18, 2001, Ahmed filed a motion in the probate court complaining that it failed to transmit the complete record and asking that the court provide him with copies. That same day, the probate court denied this motion stating that it transmitted all records to the court of appeals.
 {¶ 45} On May 2, 2001, Ahmed filed another motion asking the probate court to provide the appellate court with all missing documents. That day, the probate court granted the motion to provide missing papers and transmitted all non-stamped correspondence to the court of appeals. Ahmed now argues in his second (and part of his sixth) error assigned on appeal that this order evidences the probate court's violation of his rights to a complete appellate review. He points to a May 16, 2001 entry which denies another motion on the same grounds by directing Ahmed to the May 2 entry. It appears that Ahmed overlooks the fact that the May 2 entry granted his motion.
 {¶ 46} On May 10, 2001, Ahmed filed a motion to compel the conservator to provide all papers for use in the appeal. That same day, the probate court stated that the case had been transferred to the appellate court and that it lacked jurisdiction to rule on motions such as the motion to compel. Appellant complains about this order in his fifth and ninth assignments of error. However, the record on appeal does not consist of unstamped papers held by the conservator, and the probate court was not required to so compel.
 {¶ 47} On May 25, 2001, Ahmed filed a motion to provide findings of fact and conclusions of law supporting the rejections of his motions to provide missing materials. He also filed a motion to provide copies of papers he previously filed. Once again, the probate court answered that the case is in the court of appeals. In his sixth assignment of error, he contests this refusal. Ahmed again fails to recognize that the probate court granted his May 2 motion and submitted to this court unstamped materials which it received from him.
 {¶ 48} On July 2, 2001, Ahmed filed a motion to amend his prior motion to vacate. The court held that it could not rule on this motion due to the pending appeal. On August 3, 2001, Ahmed filed in the probate court a motion to correct the transcript under App.R. 9. On August 7, 2001, the probate court granted the motion in part and agreed to correct some portions of the transcript.
 {¶ 49} On August 20, 2001, Ahmed filed a motion to supplement the record. The same day, the court denied the motion and stated that it already ruled upon some of these issues in prior entries. He complains about this denial in his seventh assignment of error. Contrary to Ahmed's assertions, personal letters between the conservator and himself are not part of the record and need not be made part of the record. He contends that the probate court and the conservator acted improperly by conducting the affairs of the conservatorship in private letters. Even if this were so, such occurred de hors the record and thus is not reviewable on direct appeal.
 {¶ 50} On August 28, 2001, Ahmed filed a motion to add matter to the record. The court denied the motion stating that it previously considered these issues. He raised this denial in his third assignment of error stating that he deserved a ruling on the merits of the admissibility of personal letters written by the court, the conservator, and the deputy clerk. Admissibility is not an issue after judgment. Moreover, because these letters were not alleged to have been received by the probate court for filing, the probate court did not err in refusing to add them to the record as a correction.
 {¶ 51} On August 29, 2001, Ahmed filed a motion to correct various entries to conform them to the truth. In this motion, he basically complains about the merits of the content of various entries from 2000. The court denied his motion that same day. In his eighth assignment of error, Ahmed complains that the court denied this motion without findings of fact. However, he did not ask for findings until September 12, 2001 when he filed a motion to state findings and conclusions for all motions denied after April 4, 2001, especially those denied on August 28 and 29, 2001.
 {¶ 52} Yet, also on September 12, 2001, Ahmed filed notice of appeal resulting in appellate Case No. 01BA48. The notice of appeal stated that it was from the orders of August 28 and 29, 2001 and all other orders made after April 4, 2001, the date of his notice of appeal in case No. 01 BA 13. His brief in case No. 01 BA 48 was filed in June 2002. This brief exceeds the thirty-five page limit even by his own count; additionally, he does not start his count until the ninth page. According to Loc.R. IV of this court, no brief may be filed which exceeds this page-limit except by prior permission. See, also, App.R. 19(A). Appellant thus has once again violated the appellate rules. Maybe if he did not attempt to pack every thought in his head into one argument, he could make a valid point.
 {¶ 53} In conclusion, appellant refuses to recognize that his motion was partially granted in that the probate court transmitted to this court any communication it received and failed to date-stamp. Appellant also misconstrues the purpose of App.R. 9 and the reasons for correcting the record. Appellant's motion to correct the transcript, which was also partially granted, dealt with the type of scenario envisioned by the rule, e.g. where the transcriber cannot understand certain words on the tape being transcribed and the court agrees with the movant's construction of those words. However, the rule cannot be used to argue issues already on appeal. Further, it cannot be used to add collateral, albeit possibly important and illuminating, documents to a record. An appeal is not the place for attempting to force a probate court to perform various actions pending appeal. Finally, appellant should realize that bombarding a court with motions after an unfavorable judgment has been entered is not a reasonable strategy regardless of how erroneous that court's judgment appears. Nor is it reasonable to file repetitive, frivolous, and/or nonexistent motions with the appellate court while the appeal is pending. Appellant's arguments in Case No. 01BA48 are overruled, and all decisions resulting in this appellate case are affirmed.
 {¶ 54} For the foregoing reasons, the decisions of the probate court in both cases are hereby affirmed.
Waite, P.J., and Donofrio, J., concur.
[1] These payments include: Exhibit E ($430 to Kacsmar for work in divorce case); Exhibit F ($378 to Costine for payment to stenographer in divorce case); Exhibit G ($245.75 bill to Costine from Fish Reporting for Ahmed's wife's deposition in divorce case); Exhibit H ($35.75 to juvenile court for reporter in juvenile case); and Exhibit K ($1,990 to Carpino for fees in estate case).