[Cite as *P & J Design Servs., Inc. v. Linton*, 2014-Ohio-2848.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

P & J DESIGN SERVICES INC.,

    PLAINTIFF-APPELLEE,

  v.

LLOYD LINTON,

    DEFENDANT-APPELLANT.

CASE NO. 2-13-30

O P I N I O N

Appeal from Auglaize County Municipal Court
Trial Court No. 2013 CVI 00049

**Judgment Affirmed**

**Date of Decision:  June 30, 2014**

APPEARANCES:

    *Lloyd Linton,* **Appellant.**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Lloyd Linton ("Linton") brings this appeal from the judgment of the Auglaize County Municipal Court awarding damages against him to Plaintiff P & J Design Services Inc. ("P & J"), in an amount of $2,430.00, plus interest and costs. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On October 11, 2013, P & J filed a complaint in Auglaize County Municipal Court alleging that Linton owes them a sum of $3,000 plus interest for "[p]ayment for work commissioned to design a tire wire compactor." (R. at 5/6, Compl.) Copies of invoices for fifty-four hours of work performed, patent search fee, and preparing patent search documents were attached to the complaint. (*Id.*) Linton did not file an answer and the matter proceeded to bench trial.

{¶3} On November 8, 2013, the parties came to be heard before the trial court and presented their statements of fact. P & J's representative, Mr. Harris testified that he was contacted by Linton on April 13, 2013. At that point, Linton requested that P&J help him "concept design and engineer a tire wire compaction unit." (Trial to Court Tr. at 1, Nov. 8, 2013.) According to Mr. Harris, Linton explained that he was going to be seeking a patent for the design. (*Id.*) The parties agreed to a charge of $45.00 an hour and Mr. Harris "guestimated it was going to be about a 80 hour project." (*Id.* at 4.) An Agreement dated April 23,

2013, was submitted to the trial court, stating that the parties contracted for P & J Resource Development Services to provide "concept, design & detail one press per sketch." (*See* Agreement.) The contract further stated that "all work product shall remain the property of the Contractor [P & J] until paid by the Client [Linton]." (*Id.*)

{¶4} P & J performed the design work, including changes made by Linton, which required additional work. (Trial to Court Tr. at 2-3.) Upon completion of the project, Linton obtained the drawings and discontinued any further contact with P & J, failing to respond to any attempts of communication by P & J or to pay for the work performed. (*Id.* at 3-4.) Following their unsuccessful attempts to collect money from Linton, P & J sent a letter to OmniSource, a company that was to "possibly" purchase the device from Linton, advising them of the situation and of their claim to the design as their intellectual property. (*See* Letter dated June 8, 2013.) Due to the nature of the contract and Linton's failure to pay, P & J claimed to own the design; therefore, they attempted to market it. (Trial to Court Tr. at 3.) That is when they discovered that the product for which they drew the design already existed and was patented. (*Id.*)

{¶5} In addition to the copy of the agreement, P & J submitted to the trial court an Internet printout entitled "Lloyd Lintons Scam," which contained negative opinions about Linton and his business dealings. (*Id.* at 8; *see also* attachments to Trial to Court Tr.) Linton explained that those were rumors, which

resulted from a misunderstanding about a project he had been developing. (Trial to Court Tr. at 8, 11-12.) P & J also submitted a document representing a "patent search showing that the device and its patentability was highly suspect and it was a copy." (*Id.* at 10.)

{¶6} Linton testified, admitting the existence of a contract between himself and P & J. (*Id.* at 5.) He claimed that he did not request a design from P & J; rather, he needed a picture for a design for which he already had a patent pending. (*Id.*) Linton claimed that he had an already existing machine and he was just trying to get a picture of the design of the machine in order to "submit it to [his] patent guy." (*Id.* at 4-6.) He claimed that it was P & J's misunderstanding that they were asked to prepare an actual design rather than just the picture. (*See, e.g.,* *id.* at 10.) Likewise, he did not request a patent search. Linton referred to a noncompete agreement with another company, OmniSource, which was going to be "backing" his machine, arguing that it proved that he already had the design and thus, did not need the actual design from P & J. (*Id.* at 7, 9-11.)

{¶7} Linton claimed that he had requested a limit of $200 on the contract and that the limit was "put two different times" in the contract "because they told [him] that would be more than enough for just a picture." (*Id.* at 5.) He admitted that he had requested changes to the project but the changes were to conform the picture to the machine that he already had because he "just wanted a copy of the machine already existing." (*Id.* at 4-5.)

{¶8} Based on the above facts and evidence, on November 15, 2013, the trial court issued its Journal Entry. The trial court stated that it had reviewed copies of the contract executed between the parties, finding that "[o]nly the defendant's copy shows a handwritten notation as to the $200 limitation" and that there is no explanation for the discrepancy in the two documents. (R. at 12, J. Entry.) The trial court further noted that the handwritten notation "is not initialed by the parties which is often customary for such an addition." (*Id.*) Finally, the trial court focused on the language of the contract calling for "concept, design and detail one press sketch," which "would seem to involve much more than the simple drawing referred to by the defendant." (*Id.*) The trial court thus awarded damages to P & J in the amount of $2,430.00, to compensate for the work performed on the design. The trial court refused to compensate P & J for additional costs of the patent search and additional work that was not part of the contract. Linton now appeals the trial court's judgment, raising one assignment of error.

## ASSIGNMENT OF ERROR

**In regard to the journal entry from Auglaize County Municipal Court, the Judge over looked [sic] the brief [sic] of contract of when Jim (P&J) talked to Omnisource. The machine was already built with drawings long before Jim (P&J) ever signed the contract with Lloyd Linton. In addition, a contract was signed with Omnisource and Lloyd Linton to do work with the machine that was already built long before Jim (P&J) copy [sic] the drawing for Lloyd Linton. Jim (P&J) admitted in court that**

**he did extra work on his own and for the safety of the machine. In the court, Jim (P&J) did not deny the $200.00 limit.**

{¶9} In his "Law and Argument" section Linton argues that "[w]ith all of the evidence that was presented to the court and was not considered in the final decision, it is felt that the ruling is not in accordance with the facts presented." (App't Br. at 3.)  In particular, Linton claims that the agreement between him and P & J was for pictures rather than designs and that it had a limit of $200.00 on the purchase price.  For these reasons, Linton claims that the amount of fees charged by P & J and the amount of damages awarded by the trial court were not justified.

{¶10} Linton also alludes to an alleged breach of contract by P & J, which was to have occurred when P & J contacted OmniSource.  This, he argues, was in violation of the contract's term requiring that "All information furnished by either party, one to the other, shall be confidential and shall not be disclosed or divulged to anyone outside the contracting parties." (App't Br. at 2.)   Nevertheless, Linton did not bring a counterclaim against P & J for breach of contract.  Neither did he allege that the breach of contract was a defense to his obligation to pay P & J.[1] Therefore, because the alleged breach of contract was not properly asserted in the trial court, we cannot address it here.  *See State v. Peagler*, 76 Ohio St.3d 496,

---

[1] We note that during the trial Linton stated that P & J "contacted the people I am doing work with, which by violates our contract.  And saying he owns stuff and did stuff which he shouldn't have done." (Trial to Court Tr. at 6:1-3.)  Linton later commented when referring to emails contained on his phone, "It shows he did contact them and plus when he sent this E-mail.  Which he should have never had contacted them to begin with, because it was between us." (*Id.* at 7.)  These isolated comments do not amount to a counterclaim.  Furthermore, Linton did not state in the trial court that these alleged contacts by P & J were the reason why he should not be required to pay P & J for their work.

501, 668 N.E.2d 489 (1996) ("A court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue.").

{¶11} Linton's arguments that are properly before us can be summarized as challenging the trial court's interpretation of the contract and the amount of damages as being against the manifest weight of the evidence. Two legal principles are important in resolving the issues. First is the rule that when the language of a contract is clear and unambiguous, and not subject to multiple interpretations, the court will not consider extrinsic evidence, i.e., evidence outside the four corners of the document, to re-interpret the contract's terms. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), syllabus.

> Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.

*Id.* at 638, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989) syllabus, *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 130, 132, 509 N.E.2d 411 (1987), *and Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

{¶12} The second principle upon which we rely here concerns the standard of review for an argument challenging the trial court's decision as being against

the manifest weight of the evidence. The " 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. Under this standard, the reviewing court "does not reweigh the evidence" but it applies the presumption that the findings of the trier of fact are correct. *Southeast Land Dev., Ltd. v. Primrose Mgt. L.L.C.*, 193 Ohio App.3d 465, 2011-Ohio-2341, 952 N.E.2d 563, ¶ 7 (3d Dist.); *Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 7. Therefore, "[m]ere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment." *Drummer*, 2012-Ohio-3064, at ¶ 7; citing *State v. Wilson,* 113 Ohio St.3d 382, 865 N.E.2d 1264, 2007-Ohio-2202, ¶ 40. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶13} With these concepts in mind we proceed to address Linton's arguments. The language of the contract states that Linton requested from P & J "the following services: concept, design & detail one press per sketch." (*See* Agreement.) This language clearly and unambiguously requests "design," rather than a picture or a drawing—as Linton alleges. The additional words requesting "concept" and "detail" further support the trial court's finding that the contract

between the parties involved "much more than the simple drawing referred to by the defendant." (R. at 12, J. Entry.) Therefore, Linton's statements that he did not need P & J to prepare a design for a machine that already existed and that he already had an agreement with another company concerning the machine are irrelevant to the interpretation of the clear meaning of the contract. Regardless of whether Linton needed a new design from P & J, he contracted with P & J for "concept, design & detail." (*See* Agreement.) Since P & J performed the work requested, Linton is required to pay.

{¶14} The next issue is the trial court's determination of the amount of damages. Linton contends that the words "limit of $200.00," handwritten on his copy of the Agreement were not given proper weight by the trial court. He further suggests that P & J's failure to deny the $200.00 limitation at trial court proves that such limitation existed. We review the trial court's factual determinations under an abuse of discretion standard. *See In re Guardianship of Rudy*, 65 Ohio St.3d 394, 396, 604 N.E.2d 736 (1992); *Motycka v. Motycka*, 3d Dist. Van Wert No. 15-01-02, 2001 WL 688886, *2. This standard requires that the trial court's reasoning not be disturbed unless it was "unreasonable, arbitrary or unconscionable," because the trial judge is best equipped to determine and weigh the credibility of the proffered testimony. *Davis v. Flickinger*, 77 Ohio St. 3d 415, 416, 418, 674 N.E.2d 1159 (1997); *Blakemore v. Blakemore*, 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140 (1983). We do not find that the trial court's decision to

afford weight to P & J's version of the contract, which was signed by both parties, rather than Linton's version of the contract with the handwritten notation, which was not initialed by the parties, was unreasonable, arbitrary, or unconscionable. We therefore find that the trial court's findings of fact regarding the $200.00 limitation are correct and are not against the manifest weight of the evidence.

{¶15} For the foregoing reasons, we conclude that the trial court's interpretation of the contract and the amount of damages was not against the manifest weight of the evidence. Linton's assignment of error is thus overruled.

*Conclusion*

{¶16} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Auglaize County Municipal Court is thereby affirmed.

***Judgment Affirmed***


**ROGERS and SHAW, J.J., concur.**

**/hlo**