[Cite as *In re I.H.*, 2020-Ohio-4853.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re I.H.

Court of Appeals Nos. L-20-1062
L-20-1080

Trial Court No. JC 17263588

**DECISION AND JUDGMENT**

Decided: October 9, 2020

* * * * *

Christopher S. Clark, for appellant E.H.

Laurel A. Kendall, for appellant M.H.

Rebecca L. West-Estell, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant-mother, E.H., and appellant-father, M.H., to the subject minor child, I.H., and granted permanent custody to appellee, Lucas County Children Services Board. For the reasons set forth below, this court affirms the judgment of the juvenile court.

{¶ 2} The following facts are relevant to this appeal.

{¶ 3} On July 10, 2017, appellee filed a complaint in dependency and neglect, and a motion for shelter care hearing, regarding I.H., who was then 13 months old. Appellee received a referral that appellant-mother showed minimal parenting skills towards I.H. In addition, appellee alleged she had schizophrenia, which ran in her family, and had recently been admitted to a psychiatric hospital. Specifically, appellant-mother admitted she had major depression with psychotic features and had left I.H. unsupervised at La Posada Homeless Shelter when she went to a store. The shelter verified to appellee this incident was one of other similar incidents where appellant-mother left I.H. unsupervised at the shelter. Appellant-mother reported appellant-father might be the father of I.H. At the time of the complaint, appellant-father was on parole following imprisonment for a robbery conviction. The juvenile court immediately granted appellee interim temporary custody of I.H., who was placed with a foster family.

{¶ 4} On August 16, 2017, the juvenile court magistrate adjudicated I.H. a dependent and neglected child by clear and convincing evidence and granted appellee temporary custody of I.H. The magistrate approved the reunification case plan that included, among other matters, appellant-mother receiving mental health, parenting and housing services, and establishing appellant-father's paternity. The juvenile court's journalized judgment entry adopting the magistrate's decision was filed on September 13, 2017.

2.

{¶ 5} By January 10, 2018, appellant-father's paternity of I.H. was established, and he sought unsupervised visitations with I.H. On March 9, the juvenile court denied appellant-father's motion due to positive marijuana drug screens. On July 19, and again on January 7, 2019, the juvenile court each time granted appellee six-month extensions of temporary custody to allow more time for appellant-mother and appellant-father, who were not married and did not reside together, to comply with their case plan services towards the permanency plan of reunification with a parent.

{¶ 6} On June 4, 2019, appellee sought, pursuant to R.C. 2151.353(B) and 2151.414, permanent custody of I.H. due to the ongoing failures of appellant-mother and appellant-father to complete their case plan services and the need for I.H. to have a permanent placement plan, now for adoption.

{¶ 7} On December 11, 2019, appellant-mother filed a pro se motion seeking reunification with I.H. and claiming completion of her case plan services. Appellee responded that, "even though mother may have complied with case plan services, this is a compliance verses change case, and mother still has not grasped the necessity to protect [I.H.]." The juvenile court consolidated the hearing for appellant-mother's motion with the dispositional hearing for appellee's motion for permanent custody of I.H.

{¶ 8} The dispositional hearing on permanent custody commenced on December 19, 2019, and continued on February 11, 20 and 26, 2020. The juvenile court heard extensive testimony from numerous witnesses, including two caseworkers, two daycare administrators, both foster parents, the guardian ad litem, appellant-mother,

3.

appellant-father's mother, and appellant-father's grandmother, and admitted evidence in the record. At the commencement of the hearing, appellant-father moved to discharge his attorney and represent himself, which the juvenile court granted. Appellant-mother withdrew her motion to discharge her attorney. The transcripts of the hearings and admitted exhibits are in the record.

{¶ 9} By judgment entry journalized on March 16, 2020, the juvenile court granted permanent custody to appellee for adoptive placement and planning and made a number of findings relevant to this appeal.

{¶ 10} Pursuant to R.C. 2151.414(D)(1), the juvenile court found by clear and convincing evidence that permanent custody is in the best interest of I.H.

{¶ 11} Pursuant to R.C. 2151.414(E)(1), the juvenile court found by clear and convincing evidence that both appellant-mother and appellant-father have "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the family home." The juvenile court further found, "Mother has not been compliant with her case plan services." Despite completing parenting classes, appellant-mother was not fully compliant with her mental health or substance abuse services and failed to consistently attend mental health appointments with the child. The juvenile court further found that appellant-father failed to complete his case plan services by refusing to take additional parenting classes, waiting two years to re-engage in mental health services, and failing to attend any counseling sessions with I.H.

4.

{¶ 12} Pursuant to R.C. 2151.414(E)(2), the juvenile court found by clear and convincing evidence that appellant-mother has "a chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency * * * so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time" or within the applicable statutory time periods. The juvenile court further found, "Mother indicated in her Zepf assessment that she smokes marijuana daily to cope with her mental illness and is not compliant with treatment recommendations."

{¶ 13} Pursuant to R.C. 2151.414(E)(4), the juvenile court found by clear and convincing evidence that both appellant-mother and appellant-father have "demonstrated a lack of commitment toward the child by failing to regularly visit with the child when able to do so." The juvenile court further found, "Mother has missed at least 50% of available visits with [I.H.] since he came into the care and custody of [appellee]. Additionally, "Mother failed to take advantage of an open door policy on the part of the foster parents to visit with [I.H.] at any time." The juvenile court further found that both appellant-father and the relative he desired to obtain custody, I.H.'s paternal great-grandmother in Michigan, Peggy Jones, failed to show for special visits arranged in addition to the regularly scheduled visits. The juvenile court found, "Father has missed multiple visits with the child even when special visits were arranged, in addition to regularly scheduled visits, for him to visit with [Ms. Jones]. * * * Father has not taken advantage of the foster parents' open door policy for visitation."

5.

{¶ 14} Pursuant to R.C. 2151.414(E)(16), the juvenile court found by clear and convincing evidence that appellant-father "has pending felony charges that, if convicted, could result in him being unable to care for the child for a significant period [of] time."

{¶ 15} Pursuant to R.C. 2151.414(D)(1)(a), the juvenile court found by clear and convincing evidence that, "the interaction and interrelationship of [I.H.] with the foster parents is positive and [I.H.] is well cared for in the home." The juvenile court further found, "[I.H.] can continue to reside with the foster parents until an appropriate placement can be identified. The Court finds that [I.H.] is bonded with the foster parents and well cared for in the current placement."

{¶ 16} Pursuant to R.C. 2151.414(D)(1)(d), the juvenile court found by clear and convincing evidence that, "the child is in need of a legally secure permanent placement that cannot be achieved without a grant of permanent custody to Lucas County Children Services. The juvenile court further found that placement with Ms. Jones is not in the child's best interests. "Ms. Jones' home study is only provisionally approved contingent upon her becoming a licensed foster parent in the State of Michigan and Ms. Jones, by her own admission, has not begun the process." The juvenile court further found that Ms. Jones lacked a relationship with I.H. "and, by her own admission, does not know him. The child has been in the custody of LCCS for over 24 months and, during that time, Ms. Jones has made no effort to visit with [I.H] or establish a relationship with him."

{¶ 17} The juvenile court also made the following determinations of the appellee's reasonable efforts: (1) "to implement and finalize a permanent plan by finding an

6.

alternative placement for the child"; (2) "by offering case plan services to the parents that were designed to remedy the issues that led to the removal of [I.H.] and to reunify the family"; and (3) "by identifying an alternative permanent plan of permanent custody and adoption for the child."

{¶ 18} Appellant-mother timely appealed the juvenile court's decision, which was assigned case No. L-20-1062. Then appellant-father timely appealed the juvenile court's decision and was assigned case No. L-20-1080. On August 26, 2020, this court consolidated case No. L-20-1080 under case No. L-20-1062.

{¶ 19} Appellant-mother set forth two assignments of error in her appeal:

> I. The trial court erred in finding by clear and convincing evidence that appellee made reasonable efforts to reunify the child with the appellant-mother.
>
> II. The trial court erred in finding by clear and convincing evidence that it is in the best interest of the child to terminate appellant-mother's parental rights and to award permanent custody of the child to Lucas County Children Services ("LCCS").

{¶ 20} Appellant-father set forth two assignments of error in his appeal:

> I. LCCS did not prove by clear and convincing evidence that paternal great-grandmother could not be granted legal custody of the minor child when they arguably did not make reasonable efforts to assist the family with finalizing the necessary interstate home study.

7.

II.  The trial court abused its discretion by finding that the evidence did not support an award of legal custody to paternal great-grandmother when the agency arguably did not make reasonable efforts to assist the family with finalizing the necessary interstate home study.

### I.  Reasonable Reunification Efforts

{¶ 21} In support of her first assignment of error, appellant-mother argues appellee did not by clear and convincing evidence make reasonable efforts to reunify appellant-mother with her child pursuant to R.C. 2151.414(D)(1).  Appellant-mother argues the testimony by two caseworkers "indicate that [mother] had substantially complied with the case plan presented to her" by obtaining stable housing, completing a parenting program, and attending all administrative reviews regarding I.H.  She further argues, "It appears that regardless of [appellant-mother's] efforts to comply with the most recent case plan, there did not appear to be any intent to reunify I.H. with his mother."

{¶ 22} The reunification statute at issue is R.C. 2151.419(A)(1), which states:

Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of

the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

{¶ 23} Appellee filed its motion for permanent custody pursuant to R.C. 2151.413 and 2151.414. The Ohio Supreme Court guides us that the "reasonable efforts" stated in R.C. 2151.419 do not apply to an R.C. 2151.413 motion for permanent custody nor to the hearing held for that motion pursuant to R.C. 2151.414 because those matters are not among the hearings specifically itemized in the statute. *In re Mar.H.*, 6th Dist. Lucas No. L-17-1171, 2018-Ohio-883, ¶ 51, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41. "Reasonable efforts" has been defined as the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed. *In re C.F.* at ¶ 28. Nevertheless, appellee must still make reasonable efforts to reunify the family pursuant to any other applicable statutes obligating appellee to do so. *See id.* at ¶ 42-43.

{¶ 24} We review for an abuse of discretion the juvenile court's findings of fact to support the determination of "reasonable efforts." *In re Guardianship of Rudy*, 65 Ohio St.3d 394, 396, 604 N.E.2d 736 (1992). "But [a court of appeals] cannot make a finding

9.

of fact that should have been made by the trial court, nor extract such a finding from the trial court's opinion where no finding was made." *Id*. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 25} The record shows the original case plan was filed August 1, 2017, with the stated goal of reunification. Thereafter, the juvenile court consistently through January 21, 2020, made findings pursuant to R.C. 2151.412 that appellee had made reasonable efforts to reunify I.H. with either parent. Level 3 visitations are unsupervised, and for seven months appellee granted appellant-mother Level 3 unsupervised, overnight visits with I.H. Appellee reinstated supervised visitations because during the period of the unsupervised visits, I.H.'s happy, positive disposition was frequently reduced to screaming, crying, biting, spitting, hitting, and throwing toys, as observed by I.H.'s teachers, foster parents and counselor.

{¶ 26} The number of trauma incidents to I.H. entered into the record during the dispositional hearing support the juvenile court's determination that appellant-mother did not prioritize I.H.'s safety while in her care. The trauma incidents to I.H. found in the record, all before he was three years old, included being left alone in appellant-mother's apartment, being hit by appellant-mother's male friend "leaving a visible bump on his head," being threatened by the same male of burning appellant-mother's apartment with

10.

her and I.H. inside, being delivered to daycare dirty with dried feces on his butt and hungry after a weekend unsupervised visit with appellant-mother, and screaming and crying at daycare or with his foster parents whenever he realized he was being transported to his appellant-mother.

{¶ 27} Pursuant to R.C. 2151.353(A)(4), the juvenile court determined by clear and convincing evidence that I.H. cannot be placed with either parent within a reasonable time and should not be placed with either parent. In reaching its decision, the juvenile court cited extensively to the testimony and evidence received during the lengthy dispositional hearing process. The guardian ad litem and the two caseworkers assigned to appellant-mother's case described how the case plan services reasonably expected appellant-mother to address her parenting, substance abuse, mental health, and domestic violence issues. I.H. was sent by appellee to trauma counseling, but appellant-mother attended only half of the two recent months of sessions, claiming she was ill and the sessions were inconvenient. The juvenile court found that appellant-mother "has a history of mental illness with a diagnosis from one provider of depression, anxiety disorder, and schizophrenia and another of anxiety disorder and depression." The guardian ad litem testified appellant-mother "continually places other's needs in front of [I.H.'s] needs" and described I.H. as having "a genuine fear of visiting either parent and not describe visits with either parent positively."

{¶ 28} Even if appellee had reasonable efforts obligations under R.C. 2151.419(A)(1), we find appellee met its burden of proof of making reasonable efforts to

11.

prevent the removal of I.H. from the home, to eliminate the continued removal of the child from I.H.'s home, or to make it possible for I.H. to return safely home.

{¶ 29} We reviewed the record and find the juvenile court did not abuse its discretion when it made findings of fact that appellee used reasonable efforts pursuant to R.C. 2151.419(A)(1). We do not find the juvenile court's attitude was unreasonable, arbitrary or unconscionable.

{¶ 30} Appellant-mother's first assignment of error is not well-taken.

## II. Permanent Custody Determination

{¶ 31} In support of her second assignment of error, appellant-mother argues the juvenile court did not support the decision by clear and convincing evidence to terminate appellant-mother's parental rights as being in the best interests of I.H. Appellant-mother argues the evidence in the record does not support a finding she failed to regularly visit her son since he came under appellee's care. The only two-month period she did not maintain regular visits was due to illness. She argues she has complied with her case plan services.

{¶ 32} We review the juvenile court's determination of permanent custody under a manifest weight of the evidence standard. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, ¶ 37. We "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed." *Id.* We are mindful the juvenile court was

12.

the trier of fact and was "in the best position to weigh evidence and evaluate testimony."
*Id.*

{¶ 33} Prior to terminating appellants' parental rights and granting permanent custody of I.H. to appellee pursuant to R.C. 2151.353(A)(4), the juvenile court must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child * * * cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to appellee is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *In re B.K.*, 6th Dist. Lucas No. L-17-1082, 2017-Ohio-7773, ¶ 16; R.C. 2151.414(B)(2).

{¶ 34} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus. A judgment on permanent custody supported in the record by some competent, credible evidence by which the court could have formed a firm belief as to all the essential elements will not be reversed on appeal as being against the manifest weight of the evidence. *In re Denzel M.*, 6th Dist. Lucas No. L-03-1337, 2004-Ohio-3982, ¶ 8.

13.

## A. R.C. 2151.414(E) Factors

{¶ 35} Pursuant to R.C. 2151.414(E), in determining whether a child cannot or should not be placed with the parents, the juvenile court "shall consider all relevant evidence" by clear and convincing evidence, including whether one or more of the factors described in R.C. 2151.414(E)(1)-(16) exists. The record shows the juvenile court found clear and convincing evidence pursuant to R.C. 2151.414(E)(1), (2), (4) and (16). Although the juvenile court found multiple R.C. 2151.414(E) factors to support its decision, it needed to only find one. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 50.

{¶ 36} R.C. 2151.414(E)(1) states:

In determining at a hearing held pursuant to [R.C. 2151.414(A)] * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: (1) following the placement of the child outside of the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the

parents failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 37} The record indicates the juvenile court's orders approving appellant-mother's individualized case plans consistently contained the goal of reunification. R.C. 2151.412(E). Appellant-mother was bound by the terms of the case plans, and she admitted being offered her case plan services and, at times, being non-compliant with those services because she either believed she did not require those services. R.C. 2151.412(F)(1). The evidence in the record did not corroborate those subjective beliefs. *See* R.C. 2151.412(F)(2). The record shows appellant-mother's non-compliance for substance abuse, domestic violence, and mental health counseling services. Although appellant-mother completed her parenting classes, she needed additional training because she continued to lack parenting skills to soothe, comfort, and protect I.H. from harm and trauma. Appellant-mother consistently minimized the trauma to I.H. from the harm to which she exposed him during his unsupervised overnight visits with her.

15.

**{¶ 38}** We reviewed the record and find the juvenile court's findings pursuant to R.C. 2151.414(E)(1) satisfied the requirements of the first prong for determining permanent custody. We do not find the juvenile court abused its discretion with those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the first prong of a permanent custody determination.

## B. Best Interests of the Child

**{¶ 39}** For the second prong, the juvenile court must consider "all relevant factors, including, but not limited to" the five enumerated factors described in R.C. 2151.414(D)(1)(a)-(e). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 52. "The statute is written broadly to allow a free-ranging inquiry by the juvenile court judge. All relevant best-interests factors are to be considered to allow the judge to make a fully informed decision before terminating parental rights, privileges and responsibilities." *In re Tiffany Y.*, 6th Dist. Sandusky No. S-03-004, 2003-Ohio-6203, ¶ 13-14. The juvenile court's discretion in determining the best interests of I.H. with an order of permanent custody is accorded the utmost respect due to the nature of the proceeding and the impact on the lives of the parties concerned. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, at ¶ 37.

**{¶ 40}** The juvenile court determined the best interests of I.H. after considering R.C. 2151.414(D)(1)(a) and (d), which state:

> In determining the best interest of a child at a hearing held pursuant
>
> to [R.C. 2151.414(A)] or for the purposes of [R.C. 2151.353(A)(4) or (5)]

16.

or [R.C. 2151.415(C)], the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of a child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child.

* * *

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

{¶ 41} Although the juvenile court's finding under R.C. 2151.414(D)(1)(a) satisfied the requirements of R.C. 2151.414(D)(1), the court made further findings in the record by clear and convincing evidence pursuant to R.C. 2151.414(D)(1)(d). We will not disturb those findings. We find there was some competent, credible evidence by which the juvenile court could form a firm belief as to the second prong of a permanent custody determination. We do not find the juvenile court clearly lost its way to create such a manifest miscarriage of justice as to require reversal of the judgment regarding the permanent custody of I.H.

{¶ 42} Appellant-mother's second assignment of error is not well-taken.

### C. Familial Placement

{¶ 43} In support of appellant-father's first and second assignments of error, he argues the trial court erred when it failed to determine reasonable efforts to grant Ms.

Jones legal custody pursuant to R.C. 2151.414(E)(1), (4) and (16). Appellant-father argues appellee did not support by clear and convincing evidence, and the juvenile court abused its discretion, when the juvenile court found appellee made reasonable efforts to assist his family to finalize the necessary interstate home study. He argues his strong bond with Ms. Jones and faith in her ability to care for I.H. are compelling reasons appellee should have made more than a minimal effort to get Ms. Jones approved in Michigan. "This court should find that without a completed home study, it wasn't possible to rule out Ms. Jones * * * as a possible care giver, regardless of the number of times she visited the child during a period of time when she had transportation difficulties, among others."

{¶ 44} "The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard in R.C. 2151.414(E)(1)." *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, at ¶ 46 (a "reasonable effort" is an effort that is honest, purposeful and free of malice). We find the plain language of R.C. 2151.414(E)(1) is limited to reviewing appellee's reasonable efforts towards the parents, not the child's paternal great-grandmother. Despite appellant-father's claim, we reviewed the record and do not find the juvenile court made a determination on the reasonable efforts by appellee to assist Ms. Jones to finalize her interstate home study in Michigan. Nor do we find the juvenile court is required by R.C. 2151.414(E)(1) to place I.H. with Ms. Jones. *In re A.H.*, 6th Dist. Lucas No. L-18-1072, 2018-Ohio-4381, ¶ 30 (father's challenge is limited to whether the court

18.

improperly terminated his parental rights and not whether the court abused its discretion by failing to give legal custody to a relative).  Where a juvenile court properly determines permanent custody to the agency is in the child's best interest, then "legal custody to a relative necessarily is not." *In re S.C.*, 8th Dist. No. 106701, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 16.

{¶ 45} The juvenile court made the following findings of fact regarding Ms. Jones:

> Peggy Jones, Paternal Great Grandmother, testified that she would like to take legal custody of [I.H.].  Ms. Jones admitted that her home study is provisionally approved upon her becoming a licensed foster parent in Michigan and she has not started classes.  Ms. Jones testified that she spoke with someone at Michigan Child Protective and was told verbally that she did not have to become a licensed foster parent but could not recall the name of the person she spoke with.  Ms. Jones also testified that she has only visited [I.H.] a couple of times in the past two years and a half and does not know him.

{¶ 46} The record shows Ms. Jones testified on February 11, 2020, that she has not seen I.H. since summer 2019 and admitted she did not know him.

> Q:  So tell me about [I.H.].  What kind of kid is he?
>
> A:  I don't know.  I haven't spent that much time with him.  I can't give you that answer because I don't have an answer.

19.

{¶ 47} The record also shows appellant-father's case plan was for a dual diagnostic assessment. He completed one diagnostic assessment and refused any services "stating that he didn't need them." He did not reengage in services for over two years, until the week before the permanent custody disposition hearing. He was diagnosed with anxiety disorder, major depressive disorder, cannabis dependence and opiate (Fentanyl) dependence, which he admitted using. During the pendency of I.H.'s custody situation, appellant-father was indicted for serious criminal charges, including trafficking in Fentanyl and possession of a firearm under disability being a convicted felon, in Lucas County Common Pleas that he has minimized.

{¶ 48} We reviewed the record and find the juvenile court did not abuse its discretion with its findings of fact regarding Ms. Jones and appellant-father. We find the juvenile court's findings for appellant-father pursuant to R.C. 2151.414(E)(1) satisfied the requirements for awarding permanent custody of I.H. to appellee. We find there was some competent, credible evidence by which the juvenile court could form a firm belief that I.H. cannot be placed with appellant-father within a reasonable time or should not be placed with appellant-father.

{¶ 49} Appellant-father's first and second assignments of error are not well-taken.

### III. Conclusion

{¶ 50} On consideration whereof, we find the judgment of the juvenile court terminating appellant-mother's and appellant-father's parental rights and granting

20.

permanent custody of I.H. to appellee was not against the manifest weight of the evidence.

{¶ 51} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant-mother and appellant-father are ordered to equally pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
JUDGE

Christine E. Mayle, J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.