**[Cite as *In re J.P.*, 2023-Ohio-3206.]**

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**IN RE:**

    **J.P.,**
                               **CASE NO. 1-22-65**

**ADJUDGED DEPENDENT CHILD.**
                               **O P I N I O N**

**[JESSICA M. - APPELLANT]**


**IN RE:**

    **A.P.,**
                               **CASE NO. 1-22-66**

**ADJUDGED DEPENDENT CHILD.**
                               **O P I N I O N**

**[JESSICA M. - APPELLANT]**


**Appeals from Allen County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2021 JG 37241 and 2021 JG 37242**

**Judgments Affirmed**

**Date of Decision: September 11, 2023**


**APPEARANCES:**

    *Linda Gabriele* **for Appellant**

    *Ashley R. Stansbery* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Mother-appellant, Jessica M. ("Jessica"), appeals the October 3, 2022 decisions of the Allen County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, A.P. and J.P., to Allen County Job and Family Services (the "agency"). For the reasons that follow, we affirm.

{¶2} A.P., born on December 25, 2017, and J.P., born on July 5, 2019, are the minor children of Jessica and Ian P. ("Ian"). This case commenced in 2019 when the agency filed complaints in other cases involving A.P., and a half sibling of A.P., in which the agency alleged A.P. to be a dependent child after the half sibling was discovered with bruising to his face and head, bilateral extra-axial brain hemorrhages, and retinal hemorrhages. The half sibling was injured while in the care of Ian, that child's father. Following J.P.'s birth, the agency filed a motion in the previous cases alleging J.P. to be a dependent child.

{¶3} However, because those cases could not be adjudicated within the statutory time limits, the complaints were dismissed without prejudice and the agency filed new complaints in the trial court alleging A.P. and J.P. to be dependent children under R.C. 2151.04(C) on February 12, 2021. Following a probable-cause hearing, the trial court concluded that probable cause existed to believe that A.P. and J.P. were dependent children, that it was in the children's best interest to be placed in the shelter care of the agency, and that "reasonable efforts were made by

the [agency] to prevent the placement and removal of" the children from their home. (Case No. 2021 JG 37242, Doc. No. 5); (Case No. 2021 JG 37241, Doc. No. 5).

{¶4} After a hearing on March 16, 2021, Jessica and Ian admitted that A.P. and J.P. are dependent children under R.C. 2151.04(C), and the trial court adjudicated the children as such on May 7, 2021. Further, after a hearing on April 13, 2021, the trial court ordered (on May 18, 2021) that the children remain in the temporary custody of the agency.

{¶5} The trial court appointed A.P. and J.P. a guardian ad litem ("GAL") on February 19, 2021, who filed several reports throughout the development of the cases. Likewise, throughout the pendency of the cases, the trial court approved the agency's case plans, which were submitted to the trial court.

{¶6} On January 12, 2022, the agency filed motions for permanent custody of A.P. and J.P. under R.C. 2151.353 and 2151.414. After a permanent custody-hearing on August 17 and September 26, 2022, the trial court granted permanent custody of A.P. and J.P. to the agency on October 3, 2022. (Case No. 2021 JG 37242, Doc. No. 81); (Case No. 2021 JG 37241, Doc. No. 82).

{¶7} Jessica filed her notices of appeal on November 3, 2021.[1] She raises three assignments of error. For ease of our discussion, we will discuss Jessica's first and second assignments of error together, followed by her third assignment of error.

---

[1] Ian did not file a notice of appeal in either case.

**First Assignment of Error**

**The Trial Court's Decision Is Against The Manifest Weight Of The Evidence As The Agency Did Not Prove By Clear And Convincing Evidence That The Agency Should Be Granted Permanent Custody Of The Minor Children.**

**Second Assignment of Error**

**The Trial Court Abused Its Discretion In Finding That Permanent Custody To The Agency Was In The Minor Children's Best Interest.**

{¶8} In her first and second assignments of error, Jessica argues that the trial court erred by granting permanent custody of A.P. and J.P. to the agency. Specifically, Jessica argues in her first and second assignments of error that the trial court's decisions granting permanent custody of A.P. and J.P. to the agency are against the manifest weight of the evidence because clear and convincing evidence does not support the trial court's best-interest findings.

*Standard of Review*

{¶9} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be

terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶10} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, * * * has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

* * *

(d)   The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * * .

R.C. 2151.414(B)(1)(a), (d). *See also In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17 (noting "that the five factors listed in R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and that the agency need only prove one in order to satisfy the first prong of the permanent custody test").

{¶11} "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis sic.) *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55.

{¶12} "In determining the best interest of a child, a juvenile court 'may apply one of two different tests.'" *In re S.C.*, 10th Dist. Franklin No. 21AP-203, 2022-Ohio-356, ¶ 38, quoting *In re J.P.*, 10th Dist. Franklin No. 18AP-834, 2019-Ohio-1619, ¶ 39.  "'Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors * * * to decide whether granting an agency permanent custody of a child is in that child's best interest.'" *Id.*, quoting *In re J.P.* at ¶ 39.  "By contrast, 'under R.C. 2151.414(D)(2), if the juvenile court makes [each of] the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall"

-6-

commit the child to the permanent custody of the agency.'" *Id.*, quoting *In re J.P.* at ¶ 39. "These two provisions 'are *alternative* means for reaching the best-interest determination,' and '[w]here a juvenile court employs the R.C. 2151.414(D)(1) [multiple factor weighing] method of determining the child's best interest, the court need not also conduct the R.C. 2151.414(D)(2) [four-requisite prong] analysis.'" (Emphasis added.) *Id.*, quoting *In re J.P.* at ¶ 40.

{¶13} In determining whether granting the agency permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a)    The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)    The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c)    The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d)    The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e)    Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶14} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43. *See also In re A.E.*, 3d Dist. Seneca Nos. 13-14-14 and 13-14-15, 2014-Ohio-4540, ¶ 28 ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established."). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10.

{¶15} In this case, the trial court granted permanent custody of A.P. and J.P. to the agency after concluding that such a disposition is warranted under R.C. 2151.414(B)(1)(d)—that is, the trial court found that that A.P. and J.P. have been in the agency's temporary custody since May 2020. Alternatively, the trial court granted permanent custody of A.P. and J.P. to the agency after concluding that such a disposition is also warranted under R.C. 2151.414(B)(1)(a). Specifically, the trial court reasoned that R.C. 2151.414(B)(1)(a) applies since A.P. and J.P. cannot be

placed with either Jessica or Ian within a reasonable time and should not be placed with Jessica or Ian since R.C. 2151.414(E)(1) and (16) apply.

**{¶16}** While Jessica challenges the trial court's reasonable-placement finding under R.C. 2151.414(B)(1)(a), she makes no argument regarding the trial court's *alternative* finding under the first prong of the permanent-custody test. *Accord In re B.J.P.*, 3d Dist. Wyandot No. 16-18-04, 2018-Ohio-5221, ¶ 15. Specifically, the trial court resolved that A.P. and J.P. had been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two-month period. Consequently, the first prong of the permanent-custody test is satisfied here by the trial court's finding and left *unchallenged* by Jessica. *See id.*; *In re S.G.* at ¶ 11. Therefore, because the record supports the trial court's finding under R.C. 2151.414(B)(1)(d)—and because Jessica did not challenge that finding—we conclude that the trial court did not err by concluding that one provision of R.C. 2151.414(B)(1) is satisfied in these cases.

**{¶17}** Having resolved that the trial court did not err by concluding that one provision of R.C. 2151.414(B)(1) applies in these cases, we next address the trial court's best-interest determination under R.C. 2151.414(D)(1). Here, Jessica argues that the trial court's decision to sever parental rights is against the manifest weight of the evidence because the record does not reflect clear and convincing evidence by which the trial court could conclude that granting permanent custody of A.P. and

J.P. to the agency is in A.P. or J.P.'s best interest. However, our review of the record reveals competent, credible evidence supporting the trial court's factual findings relevant to the best-interest factors set forth in R.C. 2151.414(D).

{¶18} Regarding the best-interest factor under R.C. 2151.414(D)(1)(a), the trial court considered A.P.'s and J.P.'s sibling relationship as well as their relationship with their foster caregivers. Specifically, the trial court found that the children have "been in the current foster home placement since September of 2021" and that the children are able to reside together "and develop [their] relationship, while in the same foster home placement." (Case No. 2021 JG 37242, Doc. No. 81); (Case No. 2021 JG 37241, Doc. No. 82).

{¶19} Importantly, the trial court found that A.P. and J.P. "have some developmental delays, have behavioral issues, and may be on the autism spectrum." (*Id.*); (*Id.*). Here, the trial court found that, while the children exhibit "some behavioral issues due to developmental delays," "the foster family is addressing and providing for all of the [children's] needs, in a safe, stable, and secure environment." (*Id.*); (*Id.*). Indeed, Michelle Miller ("Miller"), the agency's caseworker assigned to A.P. and J.P.'s case, testified that A.P. and J.P. have made behavioral improvements in their foster-home placement.

{¶20} Regarding R.C. 2151.414(D)(1)(b)—A.P.'s and J.P.'s wishes—A.P. and J.P. were too young to directly express their wishes. As a result, the trial court

found that the GAL "recommended the award of permanent custody to the Agency, and the termination of parental rights, as being in the best interests of the" children. (*Id.*); (*Id.*). Furthermore, concerning R.C. 2151.414(D)(1)(c)—A.P.'s and J.P.'s custodial history—the trial court found that A.P. and J.P. have "been outside the care and custody of either the Mother or the Father since May of 2020, on a consecutive basis." (*Id.*); (*Id.*).

{¶21} As to R.C. 2151.414(D)(1)(d)—A.P.'s and J.P.'s need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to the agency—Jessica alleges that the evidence that "[s]he maintained stable and safe housing," "maintained employment," "fully cooperated with the agency" and "complet[ed] the case plan," and "discontinued her relationship with Ian," weighs against the agency's motions for permanent custody. (Appellant's Brief at 14-15). Nevertheless, based on our review of the record, we conclude that there is competent, credible evidence supporting the trial court's findings that granting permanent custody to the agency is the only effective means of providing A.P. and J.P. with a legally secure permanent placement. Critically, the record reveals that Jessica was unable (or unwilling) to resolve the issues that led to the removal of the children from their home—namely, issues related to her dysfunctional relationship with Ian.

**{¶22}** "[I]t is generally accepted that a trial court is not limited to considering only current compliance with case plan objectives or objectives related to housing and income in its analysis of the child's need for a legally secure permanent placement." *In re W.J.*, 3d Dist. Logan No. 8-21-29, 2022-Ohio-2449, ¶ 72. "'A legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.'" *In re K.M.*, 3d Dist. Crawford No. 3-18-11, 2018-Ohio-3711, ¶ 29, quoting *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56.

**{¶23}** Notwithstanding Jessica's argument to the contrary, the record demonstrates that Jessica cannot provide A.P. and J.P. a legally secure permanent placement. In this case, the trial court found that Jessica and Ian have "a history of housing and employment instability." (Case No. 2021 JG 37242, Doc. No. 81); (Case No. 2021 JG 37241, Doc. No. 82). The trial court further found Jessica and Ian's "relationship to be toxic and not in the best interest of the children" and that Jessica "failed to demonstrate how she places her children first, above everyone else, when she has historically sought out the continued relationship with [Ian]." (*Id.*); (*Id.*). In sum, the trial court did not "find the testimony of the Mother or the Father to be credible, truthful, or honest"—namely, as to the status of the couple's relationship.

-12-

**{¶24}** Specifically, the record not only reflects Jessica's history of housing and employment instability, but also documents Jessica and Ian's toxic relationship, which was fraught with substance abuse and domestic violence. Importantly, the record reflects that returning the children to the custody and care of Jessica could jeopardize the children's wellbeing based on the status of Jessica and Ian's relationship. *See In re W.J.* at ¶ 72-73 (concluding that evidence that returning a child to the custody and care of one parent would result in the exposure of that child to the other parent is evidence that the parent could not provide the child a legally secure permanent placement).

**{¶25}** Dr. Thomas L. Hustak ("Dr. Hustak"), a clinical and forensic psychologist, who evaluated Jessica and Ian on behalf of the agency, testified to the contentious nature of Jessica and Ian's relationship and indicated that the couple would be unlikely to successfully manage developmentally-challenged children. Critically, Dr. Hustak identified in his forensic-psychological evaluation (which was admitted into evidence) that "the intent of Jessica [] to reconcile and maintain a relationship with Ian [] would suggest that this is not likely to be proclaimed a safe and stable living environment" due to "the inability of [Jessica and Ian] to live together without conflict while raising children." (State's Ex. 7). Importantly, Dr. Hustak stressed that the inability of Jessica and Ian to provide a stable environment for the children is further complicated by the instability of their relationship.

{¶26} Likewise, Miller testified that Jessica and Ian have not always been forthcoming with the agency regarding the status of their relationship. Nevertheless, Miller testified that Jessica and Ian appeared on the Dr. Phil television show in November 2021 to discuss their issues. (*See* State's Ex. 8). In that episode of the Dr. Phil television show, Miller testified that Jessica and Ian can be seen "holding hands, talking about how they needed to work together on things" during a timeframe that "they were reporting [to the agency that] they were not together as a couple * * * ." (Aug. 17, 2022 Tr. at 134). In sum, Miller further testified that Jessica "will always put Ian before her own children. She's done it in the past, and [she does not] see her changing." (*Id.* at 151-152). Consequently, the trial court's conclusions that A.P. and J.P. are in need of a legally secure permanent placement and that type of placement cannot be achieved without grating the agency's motions for permanent custody are not against the manifest weight of the evidence.

{¶27} Finally, with respect to R.C. 2151.414(D)(1)(e)—whether any of the factors in R.C. 2151.414(E)(7)-(11) apply—Jessica contends that the trial court improperly weighed her marijuana and LSD use against her. Jessica's arguments are without merit. Even though the trial court "acknowledge[d] that the Mother has used illegal substances, especially, LSD, while in charge of the care of the children," the trial court ultimately concluded that "none of the other factors set forth in R.C.

§ 2151.414(E) (7-11) are present" in these cases. (Case No. 2021 JG 37242, Doc. No. 81); (Case No. 2021 JG 37241, Doc. No. 82).

**{¶28}** Consequently, based on the totality of the evidence, we conclude that the trial court's conclusions that it is in A.P.'s and J.P.'s best interest to grant the agency's motions for permanent custody are supported by clear and convincing evidence. Therefore, we conclude that the trial court's decisions to grant permanent custody of A.P. and J.P. to the agency are not against the manifest weight of the evidence. Thus, the trial court did not err by granting the agency's motions for permanent custody.

**{¶29}** For these reasons, Jessica's first and second assignments of error are overruled.

### Third Assignment of Error

**The Trial Court Committed Prejudicial Error In Finding That The Agency Made Reasonable Efforts For The Minor Children To Return To The Custody Of Appellant-Mother.**

**{¶30}** In her third assignment of error, Jessica argues that the trial court erred by granting permanent custody of A.P. and J.P. to the agency because the agency failed to make reasonable efforts toward reunification. Specifically, Jessica contends that the record reveals that the agency failed to make reasonable efforts toward reunification notwithstanding her completion of "the case plan"; that her "visits with the children went well and were appropriate"; and that "there is clear

evidence that [she] worked through a lengthy process to address her mental health and financial obstacles to create a stable environment for the children." (Appellant's Brief at 18).

*Standard of Review*

**{¶31}** "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 24. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶32}** "'Reasonable efforts' has been defined as the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed." *In re I.H.*, 6th Dist. Lucas No. L-20-1062, 2020-Ohio-4853, ¶ 23, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 28. However,

> [n]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.* at ¶ 29. In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). The Supreme Court of Ohio

> determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis sic.) *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

> According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

{¶33} In these cases, the trial court made its reasonable-efforts finding under R.C. 2151.419 in its May 18, 2021 dispositional entries committing A.P. and J.P. to

the temporary custody of the agency. *Accord In re W.J.*, 2022-Ohio-2449, at ¶ 87. "Consequently, the trial court was not required to make any further reasonable-efforts findings." *Id.* "'Stated another way, because the trial court previously made the requisite R.C. 2151.419 "reasonable efforts" findings, it was not required to again make that finding at the hearing on the agency's motion[s] for permanent custody filed under R.C. 2151.413.'" *Id.*, quoting *In re B.J.P.*, 2018-Ohio-5221, at ¶ 18.

**{¶34}** Specifically, the trial court concluded that the agency exhibited reasonable efforts to eliminate the continued removal of A.P. and J.P. from their home. Indeed, the trial court resolved that "the parents have had over three (3) years to participate in, comply with, and complete Case Plan services and have failed to do so." (Case No. 2021 JG 37242, Doc. No. 81); (Case No. 2021 JG 37241, Doc. No. 82). Critically, the trial court concluded that "additional time" "would [not] alleviate the risks to the children, and enable the children to be placed in" either parent's care since the parents "failed to comply with the Case Plan requirements and objectives, and have failed to make lifestyle changes to ensure the safety and well-being of the children." (*Id.*); (*Id.*).

**{¶35}** Nevertheless, Jessica contends that the trial court abused its discretion by concluding that the agency made reasonable efforts toward reunification. Jessica's arguments in support of this assignment of error are problematic.

Notwithstanding Jessica's contention that she "completed the case plan and successfully completed all the required steps there in a timely manner," the trial court contrarily concluded "that the parents have failed to complete Case Plan Services." (Appellant's Brief at 18); (Case No. 2021 JG 37242, Doc. No. 81); (Case No. 2021 JG 37241, Doc. No. 82). Based on our review of the record, we conclude that the agency's reunification efforts were reasonable and diligent under the circumstances.

{¶36} Indeed, "'"[c]ase plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated."'" *In re A.M.*, 2015-Ohio-2740, at ¶ 25, quoting *In re T.S.*, 3d Dist. Mercer Nos. 10-14-13, 10-14-14, and 10-14-15, 2015-Ohio-1184, ¶ 26, quoting *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3 (Oct. 30, 2001). "'To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification.'" *Id.*, quoting *In re T.S.* at ¶ 27, citing *In re Evans* at *3. "'Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan.'" *Id.*, quoting *In re T.S.* at ¶ 27, citing *In re Evans* at *3. "'"Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case."'" *Id.*, quoting *In re T.S.* at ¶ 27, quoting *In re Leveck*,

2003-Ohio-1269, at ¶ 10. "'"Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.'" *In re H.M.K.*, 2013-Ohio-4317, at ¶ 95, quoting *In re M.A.P.*, 12th Dist. Butler Nos. CA2012-08-164 and CA2012-08-165, 2013-Ohio-655, ¶ 47. "'We also note that the statute provides that in determining whether reasonable efforts were made, the child's health and safety is paramount.'" *In re A.M.* at ¶ 25, quoting *In re T.S.* at ¶ 27, citing R.C. 2151.419(A)(1).

{¶37} In these cases, the record reflects that the trial court's reasonable-efforts findings are supported by clear and convincing evidence. Importantly, the trial court found that "the parents both have mental health concerns that are not being properly addressed" and that, while Jessica "is in counseling[, she] has not been able to demonstrate the skills she has learned from counseling" because she "is overly emotional and becomes overwhelmed, even while parenting the children at the supervised visits at the agency." (Case No. 2021 JG 37242, Doc. No. 81); (Case No. 2021 JG 37241, Doc. No. 82). Furthermore, Jessica "admitted to the Agency the day before the hearing held on August 17, 2022, that she is still struggling emotionally" and "that she had to quit her job due to a complete mental breakdown, when she discovered that [Ian] was in a relationship with another woman." (*Id.*); (*Id.*).

**{¶38}** Indeed, Miller testified that while Jessica was attending counseling, she continued to exhibit erratic and overly emotional behavior and that she did not put the needs of the children first. Likewise, Dr. Hustak testified at the permanent-custody hearing to Jessica's continued erratic and argumentative behavior. He identified in his forensic-psychological evaluation that "[t]o say [Jessica] appears to be in distress is, at times, an understatement." (State's Ex. 7).

**{¶39}** Furthermore, Dr. Hustak identified in his evaluation that Jessica fails to complete her "homework assignments as part of her treatment" with her therapist and that her failure to complete those "therapy assignments will <u>not</u> be effective for her long-term." (Emphasis sic.) (*Id.*). Dr. Hustak further acknowledged that Jessica and Ian had "not been able to successfully establish, over the course of talking with them for a year, any effective plan for providing a stable home environment where the chaos of their lives has been managed effectively." (*Id.*). Likewise, he testified that "the probability for [the parents] following [the agency's recommendations] would be low, provided they were given that suggestion by their various counselors that they were seeing and or [the agency] trying to work with them on reunification." (Aug. 17, 2022 Tr. at 51).

**{¶40}** Thus, based on the record before us, Jessica has not demonstrated that the trial court abused its discretion by determining that the agency made reasonable efforts toward reunification.

**{¶41}** Therefore, Jessica's third assignment of error is overruled.

**{¶42}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**MILLER, P.J. and POWELL, J., concur.**

**/jlr**

**\*\* Judge Stephen W. Powell of the Twelfth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**